HJARNE v. AMERICAN VOTING MACH. CO.

(District Court, D. Massachusetts. March 18, 1914.)

No. 371.

1. PATENTS (§ 328*)—VALIDITY—VOTING MACHINES.
     Johnson patent, No. 960,020, claim 3, *held* fatally defective for indefiniteness in that it was impossible to determine with definiteness which of the things mentioned as elements of the combination claimed were intended to be described as permitting the key-spindle to be turned back at any time before the machine was set for the next voter.
2. PATENTS (§ 328*)—INFRINGEMENT—VOTING MACHINES.
     Johnson patent, No. 1,019,476, claims 4 and 5, for an interlocking device in voting machines, *held* not anticipated by Weser patent, No. 448,308, for pedal-action for piano-fortes, but were valid and infringed.

In Equity. Suit by Carl E. Hjarne against the American Voting Machine Company for patent infringement. Decree for complainant for part of the relief demanded.

Louis H. Harriman, of Boston, Mass., for complainant.
Clyde L. Rogers, of Boston, Mass., for defendant.

DODGE, Circuit Judge. The plaintiff alleges infringement by the defendant of United States patent No. 960,020, May 31, 1910, for a voting machine, and of United States patent 1,019,476, March 5, 1912, for a locking device for registering mechanism. Both were issued to G. Johnson, assignor, and the plaintiff owned both when the bill was filed.

The first-named patent has eight claims, but we are concerned only with the third. The other patent has eleven claims, whereof the fourth and fifth only are now to be considered. The plaintiff gave

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

notice on the record, after the defendant's evidence had been closed and before taking evidence in rebuttal, that the arguments would be restricted, on final hearing, to the claims above specified.

The defendant company makes a voting machine wherein are found, according to the plaintiff's expert, the subject-matter and all the elements of the above claims, in substantially the same relation as set forth in the respective patents. No testimony in contradiction of this has been introduced by the defendant, but it denies the validity of each and all the claims in question.

The following description of a voting machine containing the mechanism described in both patents is quoted from the plaintiff's brief:

The machine "has a so-called key-spindle *50*, for each candidate, each spindle having a register connected thereto, so that for each half of a full rotation forward, a single vote will be registered. A locking-lever *56* is provided for each key-spindle, which operates to lock the same against further forward rotation, when it has been rotated a ·half revolution forward, and means, as a pawl *49*, are provided to prevent rearward rotation thereof, under certain conditions. The key-spindles are arranged in a series of vertical rows, and a vertical bar *44* is provided for each row, which is lifted, to a certain extent, when a spindle in the row is rotated forward, and limits, the number of spindles in the row which may be operated by a single voter, i. e., according to the number of candidates which may be voted for under one head. This is done by providing a stop, which limits the extent to which the bar is raised, the stop being adjusted according to whether the voter is to be permitted to vote for one or more candidates for the same office. These bars are also moved to lock all the spindles against rotation, as the voter leaves the booth, so that the machine cannot be * * *· operated, except in the regular way. The entrance to the machine or booth is guarded by a lever which the voter must lift as he enters, and in doing this, he unlocks these bars so that the key-spindles may be operated, and the exit from the machine is guarded by a similar lever, so that, as the voter leaves the machine, he must lift this lever, and, by so doing, he draws down all the bars and locks them, and by locking them locks the key-spindles so that the machine cannot be operated until the entrance lever is again lifted."

[1] Claim 3 of patent 960,020 relates to the key-spindles and the means for regulating or controlling their rotation. It is as follows:

"3. In a voting machine, a combination of a manually controlled key-spindle, a rack having teeth, a wheel having teeth for engaging said rack, a locking-lever and a cam-wheel, turning with said toothed-wheel and engaging said locking-lever to prevent more than a half revolution forward of said key-spindle by any one voter, but which permits the key-spindle to be turned back at any time before the machine is set for the next voter."

There is an obvious difficulty in determining from the above language used which of the things mentioned as elements of the combination claimed are intended to be described as permitting the key-spindle to be turned back at any time before the machine is set for the next voter. And the specification and drawings show that none of the elements mentioned as included in the combination can properly be said to effect this result. Means to effect it are indeed described in the specification and drawings, but they show a feature essential to the accomplishment of the result by the means described, viz., a dog or pawl *49*, pivotally mounted in the casing of the machine and weighted at one end in order to keep it normally away from the cam-wheel mentioned in the claim, wherewith it is at times to be engaged. Of this dog or pawl there is no mention in the claim. I do not think it can

be brought in by implication or inference under the circumstances shown. Without it, the claim is either too incomplete and indefinite to be valid, as to the mechanism whereby turning back of the key-spindle is to be "permitted" within the limits stated, or it is anticipated by a prior voting machine patent, also issued to Johnson (No. 737,412), no infringement whereof is charged.

[2] The plaintiff's other patent, No. 1,019,476, relates to the mechanism whereby the levers lifted by the voter when he enters or leaves, unlock or lock the bars so as to permit or prevent operation of the key-spindles.

Claim 4 of this patent reads:

"4. In a locking device for registering and similar machines, the combination of a shaft provided with a plurality of transverse members adapted to engage and lock the operative parts of the machine, means to unlock said shaft, means to rotate said shaft when unlocked to release said operative parts, a finger mounted on said shaft, a cam-lever adapted to engage said finger to return said shaft to a locked position and means to operate said cam-lever."

The defendant objects that the element "a cam-lever, etc.," appears from the specification and drawings to be neither a cam in any proper sense, nor a lever in any sense, and that the claim is left by such a misdescription too indefinite and uncertain to be valid. The specification and drawings, however, leave no doubt as to the precise nature of the thing to which the name criticised is applied, or as to its construction or mode of operation. I am unable to say that the term used is so inapplicable as to be misleading, and unable therefore to hold this claim invalid.

Claim 5 of the same patent, No. 1,019,476, is as follows:

"5. In a locking device, the combination of a shaft provided with a plurality of transverse members adapted to engage and to lock the operative parts of a given mechanism, means to lock said shaft when it is in a position to lock said operative parts, means to unlock said shaft, a lever to control said unlocking means, means to operate said shaft when unlocked to release said operative parts, means to return said shaft to a locked position and a lever to operate said returning means."

The defendant contends that all the elements of this claim are found in a patent belonging to a nonanalogous art, viz., United States patent to C. L. Weser, No. 448,308, for pedal-action for piano-fortes. The mechanism there described might be said to constitute a locking device and to include a shaft, but the shaft has a plurality of transverse members adapted to engage and lock operative parts of a given mechanism only in case a crank, formed by a U-shaped lateral bend in the shaft, whereby a rotation of the shaft is made to raise or lower what is called the action-rod, can be counted as two transverse members instead of one. The patent in suit makes it clear that the means to lock the shaft when in position to lock the operative parts and the means to return the shaft to locked position, which form part of the combination claimed, are independent and distinct elements; whereas, in the mechanism of the Weser patent the same parts of the mechanism constitute the means for effecting both results. The above are not the only respects in which the attempt to find all the elements of the claim under consideration in the Weser patent requires a resort to

constructions which seem to me strained and unnatural. It is evident that the mechanism patented by Weser was neither intended to accomplish, nor capable of accomplishing, the purposes of the combination claimed, as found, by Johnson. I am therefore unable to regard this claim as anticipated.

I must therefore hold that claim 3 of Johnson patent, No. 960,020, is invalid, but that claims 4 and 5 of Johnson patent, No. 1,019,476, are valid and infringed by the defendant. There may be a decree accordingly.